The STATE of Ohio, Appellee,

v.

GONYOU, Appellant.

[Cite as *State v. Gonyou* (1995), 108 Ohio App.3d 369.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–089.

Decided Dec. 22, 1995.

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, and *Bruce J. Sorg,* Assistant Prosecuting Attorney, for appellee.

*Jeffrey M. Gamso,* for appellant.

SHERCK, Judge.

This appeal comes to us from the Lucas County Court of Common Pleas. Appellant is appealing his conviction and sentence for aggravated drug trafficking. Because we conclude that the trial court erred in failing to suppress evidence found as the result of an unlawful search, we reverse.

At approximately 2:00 p.m. on May 26, 1994, Trooper Tracy McCray, a member of the Ohio Highway Patrol's drug interdiction unit, was patrolling the Ohio Turnpike in western Lucas County when he noted an eastbound Chevrolet with

Indiana plates. Trooper McCray followed the Chevrolet for approximately one and one-half miles clocking its speed at seventy-one m.p.h. The speed limit for that section of the turnpike was sixty-five m.p.h.

The trooper pulled the car over with the intention, as he later testified, of giving the driver a speed warning ticket. Approaching the car, the trooper noted that its interior was littered with fast food wrappers and a container of partially eaten fried chicken.

On request, the car's driver produced a valid Texas driver's license, a vehicle registration in the name of appellant, Matthew J. Gonyou (who was sitting in the front passenger's seat), and a Texas probation trip permit. The trooper asked the driver where they had come from and where they were going. The driver told him that appellant had picked him up in Texas and that the two of them were going to Wellington, Ohio. Noting that the license listed the driver's address as Splendora, Texas, the trooper then asked the driver, "if there was a significant drug problem in Splendora, Texas * * *." According to the later testimony of Trooper McCray, the driver "answered quickly with a no and looked away." The trooper testified that this, combined with the trash in the car, aroused his suspicion.

The trooper then returned to his patrol car, where he requested assistance from his drug interdiction team partner and a canine unit. He also brought the driver back to his patrol car so that the driver and appellant could be questioned separately. He then ran a criminal history check on the driver and checked the validity of his driver's license.

Approximately thirteen minutes after the initial stop, the officer's interdiction unit partner arrived. After a one-and-one-half minute conversation with appellant, the partner returned to Trooper McCray's car and informed him that he could smell the odor of raw marijuana in the vehicle. The partner later testified that he did not smell the fried chicken.

Several minutes later, the canine unit arrived. The search dog indicated the presence of drugs in the vehicle. The vehicle was searched at the scene; marijuana was found in four sealed plastic bags. The bags were wrapped in a brown paper bag and were lying under some clothes in a closed gym bag in the car's trunk. Appellant admitted that the gym bag and the marijuana were his.

Appellant was charged with aggravated drug trafficking. He entered an initial plea of not guilty and moved to suppress the marijuana. The trial court denied appellant's motion. Appellant then amended his plea to one of no contest, was found guilty, and sentenced.

Appellant now appeals, setting forth the following single assignment of error:

"The trial court erred to defendant-appellant's prejudice by overruling his motion to suppress."

Warrantless searches are *per se* unreasonable under the Fourth and Fourteenth Amendments to the Constitution of the United States and Section 14, Article I of the Ohio Constitution. *California v. Acevedo* (1991), 500 U.S. 565, 580, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619, 634; *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 376–377, 373 N.E.2d 1252, 1255. Where there is a reasonable and articulable suspicion to believe that a motor vehicle or its occupants are in violation of the law, stopping the vehicle and detaining its occupants will not violate the Constitution. *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673–674. However, the scope of a detention "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238. "The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime." *State v. Smotherman* (July 29, 1994), Wood App. No. 93WD082, unreported, 1994 WL 395128, citing *State v. Bevan* (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099, 1101–1102.

Various activities, including following a script, prolonging a traffic stop in order to "fish" for evidence, separating an individual from his car and engaging in "casual conversation" in order to observe "body language" and "nervousness," have been deemed (depending on the overall facts of the case) to be manipulative practices which are beyond the scope of "the fulfillment of the purpose for which the stop was made." *State v. Correa* (1995), 108 Ohio App.3d 362, 368, 670 N.E.2d 1035, 1039; see, also, *State v. Smotherman, supra.*

When Trooper McCray asked questions irrelevant to the original purpose of the stop, he was expanding the investigative scope of the detention. Until that questioning, drugs were not material to the purpose of the stop. Where appellant was going, where he was from and whether Splendora, Texas, had a drug problem are not relevant to whether a speeding law was violated. Appellee points to no evidence beyond the clutter of food wrappers and the container of partially eaten chicken that preceded the drug-related questioning. According to Trooper McCray's testimony, his suspicions were based only on the condition of the interior of the car and the response to these questions. The trooper did not observe the suspicious behavior (nervousness) until it was elicited by the pointed questioning. Additionally, the purpose of the questioning, according to Trooper McCray's partner, was "[t]o raise a reasonable suspicion that maybe criminal activity is going on."

The tactics employed by the drug interdiction unit in this specific case are, in our view, clearly manipulative practices designed to expand the scope of the investigation beyond the parameters warranted by the initial stop. As such, they are violative of the Fourth and Fourteenth Amendments to the Constitution of the United States and Section 14, Article I of the Ohio Constitution. Accordingly, the trial court erred in failing to suppress evidence which was the fruit of the ensuing search. Accordingly, appellant's sole assignment of error is found well taken.

On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings consistent with this opinion. Court costs of this appeal are assessed to appellee.

*Judgment reversed.*

ABOOD, P.J., and HANDWORK, J., concur.