DECISION AND JUDGMENT ENTRY
This is an appeal from a Chillicothe Municipal Court judgment of conviction and sentence. The court found Brian A. Spindler, defendant below and appellant herein, guilty of receiving stolen property, in violation of Chillicothe Revised Ordinance Section 545.18.
Appellant raises the following assignment of error for review:
 "THE COURT ERRED IN VIOLATION OF MR. SPINDLER'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTIONS WHEN THE TRIAL COURT OVERRULED MR. SPINDLER'S MOTION TO SUPPRESS EVIDENCE."
On March 15, 2001, at approximately 11:00 p.m., Chillicothe Police Officer Kevin M. Teeters received a report that two males may have broken into the Sunnyside Deli. Officer Teeters walked to the location and approached appellant and his companion. Officer Teeters informed them that he had received a complaint regarding a possible break-in at the deli and he requested identification from both the appellant and his companion.
Officer Teeters then asked both individuals if he could search them. Appellant and his companion consented, and the officer found no contraband or weapons on either individual. Officer Teeters had noticed, however, that appellant, prior to consenting to the search, had placed a red box on the ground. Officer Teeters estimated that the box was about six inches wide, three or four inches deep, and eight or nine inches long.
Officer Teeters asked appellant if he could also search the box. Appellant consented and Officer Teeters discovered some cassette tapes inside the box. The officer asked appellant what kind of tapes they were, but appellant could not tell the officer what was on the tapes. Because the officer knew that several vehicles had been broken into in the area and that cassette tapes were stolen from the vehicles, and because appellant could not inform the officer what was recorded on the cassette tapes, the officer decided to arrest appellant.
On March 16, 2001, appellant was charged with receiving stolen property, in violation of Chillicothe Revised Ordinance 545.18.
On June 1, 2001, appellant filed a motion to suppress evidence. Appellant argued that Officer Teeters violated his Fourth Amendment rights by continuing to detain him without reasonable suspicion of criminal activity. Appellant argued that when the officer obtained appellant's consent to search the box, the officer was, at that time, illegally detaining appellant. Thus, appellant reasons, appellant's consent to search was invalid. Appellant claimed that the purpose of the initial stop, to investigate whether a break-in had occurred at the deli, had ended before the officer requested appellant's consent to search. On July 13, 2001, the trial court held a hearing to consider appellant's motion to suppress evidence. At the hearing, Officer Teeters stated that he requested to look inside the red box because he was concerned that a weapon could be concealed inside the box. Officer Teeters stated that he had not received any specific reports of vehicles being broken into that particular evening, but that, he also became suspicious because the men were walking in an alley with a tape case when a number of vehicles recently had been broken into and the "number one" item taken from vehicles is cassettes/compact discs. Officer Teeters further explained that although he initially stopped appellant to investigate the possible break-in at the deli, he also was suspicious because of the late hour, the previous vehicle thefts, and the two men walking down the alley carrying a red box.
On July 13, 2001, the trial court overruled appellant's motion to suppress evidence. Appellant entered a no contest plea to the charge and the trial court found him guilty. Appellant filed a timely notice of appeal.
In his sole assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence. Specifically, appellant contends that the officer violated his Fourth Amendment right against unreasonable seizure: (1) when no evidence exists that the officer's continued detention related to the reason for the initial stop; and (2) when the officer continued to detain him without acquiring reasonable suspicion independent of the reasonable suspicion that prompted the initial stop. Appellant further claims that the officer violated his Fourth Amendment right against unreasonable search when the officer, during an illegal detention, obtained appellant's consent to search. Appellant argues that his consent given during the illegal detention was not valid, absent evidence that such consent was an independent act of free will. We disagree with appellant.
We initially note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1, 3. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 995;State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584. Accordingly, a reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Dunlap, supra; Long, supra; State v. Medcalf
(1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported. See, generally, United States v. Arvizu (2002), ___ U.S. ___, 122 S.Ct. 744; Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911.
The Fourth Amendment to the United States Constitution[1] protects individuals against unreasonable governmental searches and seizures. See, e.g., Arvizu; Terry v. Ohio (1968), 392 U.S. 1, 9, 88 S.Ct. 1868,20 L.Ed.2d 889. "Searches [and seizures] conducted outside the judicial process, without prior approval by a judge or magistrate, are per se
unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v.United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v.Weisner (1999), 87 Ohio St.3d 295, 297, 720 N.E.2d 507, 510; Xenia v.Wallace (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop and briefly detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot."Terry, 392 U.S. at 30, 88 S.Ct. 1868, 20 L.Ed.2d 889; see, also, Arvizu;Illinois v. Wardlow (2000), 528 U.S. 119, 123, 120 S.Ct 573,145 L.Ed.2d 570; State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; Statev. Venham (1994), 96 Ohio App.3d 649, 654, 645 N.E.2d 831, 833. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime. See Terry, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889.
A valid investigative stop must be based upon more than a mere "hunch" that criminal activity is afoot. See, e.g., Arvizu; Wardlow,528 U.S. at 124, 120 S.Ct. 673, 145 L.Ed.2d 570; Terry, 392 U.S. at 27,88 S.Ct. 1868, 20 L.Ed.2d 889. Reviewing courts should not, however, "demand scientific certainty" from law enforcement officers. Wardlow,528 U.S. at 125, 120 S.Ct. 673, 145 L.Ed.2d 570. Rather, a reasonable suspicion determination "must be based on commonsense judgments and inferences about human behavior." Id. Thus, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Arvizu; Wardlow, 528 U.S. at 123, 120 S.Ct. 673,145 L.Ed.2d 570.
In deciding whether a reasonable suspicion exists, courts must examine the "`totality of the circumstances' of each case to determine whether the detaining officer has a `particularized and objective basis' for suspecting legal wrongdoing." Arvizu (quoting United States v. Cortez
(1981), 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621). The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Arivuz (quoting Cortez,449 U.S. at 418, 101 S.Ct. 690, 66 L.Ed.2d 621). Thus, when a court reviews an officer's reasonable suspicion determination, a court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers. Id.
A particular factor under the totality of the circumstances test need not be criminal in and of itself. See Arvizu; United States v. Sokolow
(1989), 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (stating that factors that are "consistent with innocent" activity may collectively amount to reasonable suspicion); Terry, 392 U.S. at 22, 88 S.Ct. 1868,20 L.Ed.2d 889 (stating that a series of act "perhaps innocent in itself" may together add up to reasonable suspicion). Moreover, "[a] determination that reasonable suspicion exists * * * need not rule out the possibility of innocent conduct." Arvizu. Instead, the totality of the circumstances, whether innocent or not, must indicate that criminal activity is afoot. See e.g., Terry, supra.
Once an officer lawfully stops an individual, the officer must carefully tailor the scope of the stop "to its underlying justification."Florida v. Royer (1983), 460 U.S. 491, 500, 103 S.Ct. 1319,75 L.Ed.2d 229; see, also, State v. Gonyou (1995), 108 Ohio App.3d 369, 372,670 N.E.2d 1040, 1041; State v. Birchfield (Aug. 26, 1997), Ross App. No. 97 CA 2281, unreported. Additionally, the length of the stop must "last no longer than is necessary to effectuate the purpose of the stop."Royer, 460 U.S. at 500, 103 S.Ct. 1319, 75 L.Ed.2d 229. The rule set forth in Royer is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime. Gonyou, supra;Sagamore Hills v. Eller (Nov. 5, 1997), Summit App. No. 18495, unreported.
An officer may, however, expand the scope of the stop and may continue to detain the individual without running afoul of Royer if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot. See, e.g., Terry, supra; State v.Robinette (1997), 80 Ohio St.3d 234, 240, 685 N.E.2d 762; State v.Retherford (1993), 93 Ohio App.3d 586, 601, 639 N.E.2d 498, 508. As the court stated in Robinette, paragraph one of the syllabus:
 "When a police officer's objective justification to continue detention of a person * * * is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."
Thus, if a law enforcement officer, during a valid investigative stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." Id.,80 Ohio St.3d at 241, 685 N.E.2d at 768.
In the case at bar, no dispute exists that the officer's initial stop of appellant complied with the Fourth Amendment. Instead, the dispute concerns whether the officer violated Royer by continuing to detain appellant.
We note that in the case sub judice the record does not reveal whether the officer had fulfilled the purpose of the initial stop when he asked appellant's consent to search the red box. The officer admitted that he eventually learned that a break-in had not occurred at the deli. The officer could not, however, recall exactly when he learned the information. Nevertheless, because we believe that the officer acquired a reasonable suspicion of criminal activity independent of the reasonable suspicion that prompted the initial stop, whether the officer learned that no break-in had occurred either before or after obtaining appellant's consent does not affect the ultimate result in the case subjudice. We note that the officer testified that although he initially stopped appellant to investigate the alleged break-in, he became suspicious of additional possible criminal activity given the late hour and the two men walking in a dark alley with one of the men carrying a red box, and when he recalled that numerous vehicles recently had been broken into and cassette tapes had been stolen. The officer could properly draw inferences from these facts and we believe that his inference of criminal activity was reasonable.
Although appellant's conduct may arguably have appeared innocent to the untrained eye, to one versed in law enforcement, appellant's conduct indicated a possibility of criminal activity. We again note that theFourth Amendment does not demand scientific certainty. Nor does it require the officer to possess a preponderance of the evidence that the person is engaged in criminal activity. Consequently, we disagree with appellant that the officer illegally continued to detain appellant. Thus, the officer did not illegally detain appellant and appellant's consent was not vitiated, as appellant suggests.
Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] The Fourth Amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Section 14, Article I of the Ohio Constitution also protects individuals from unreasonable searches and seizures. The section provides:
 The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.
The Ohio Supreme Court has stated that the protections set forth in Section 14, Article I of the Ohio Constitution are coextensive with the protections set forth in the Fourth Amendment to the United States Constitution. See State v. Robinette (1997), 80 Ohio St.3d 234, 238-38,685 N.E.2d 762, 767.