OPINION
{¶ 1} Appellant, the state of Ohio, appeals from the decision of the Portage County Court of Common Pleas granting a motion to suppress evidence filed by appellee, Lawrence A. Molek ("Molek").
 {¶ 2} On September 20, 2001, appellee was indicted on one count of carrying a concealed weapon, in violation of R.C. 2923.12. Appellee subsequently pleaded not guilty.
 {¶ 3} On October 19, 2001, appellee filed a motion to suppress any evidence and statements attributed to him, including answers he gave to law enforcement officers. In his motion, appellee argued: the arresting officer lacked reasonable cause to stop and/or detain him; the officer lacked probable cause to arrest; he was not advised of his Miranda rights prior to custodial detention; and, the search of his automobile was unconstitutional.
 {¶ 4} On December 3, 2001, the trial court held a hearing on the motion to suppress. At the hearing, appellant, the State of Ohio, presented the testimony of Patrolman Thomas N. Eskridge ("Patrolman Eskridge") of the Garrettsville Police Department.
 {¶ 5} Patrolman Eskridge testified that, on February 23, 2001, he took his Chief through the drive-thru line at the McDonald's in Garrettsville, Ohio. He pulled into the line behind a red 1991 Geo hatchback and observed the driver: look into his rearview mirror; notice the marked patrol car directly behind him; grab the steering wheel with both hands; and, sit rigidly in his seat.
 {¶ 6} Patrolman Eskridge attested that the Geo's license plate was covered with snow, making it illegible. As a result, he could only read "the very top of the numbers." The officer attempted to run the license plate, which he guessed was AJE 1712, through "LEADS." License plate AJE 1712 was registered to a 1997 Ford station wagon. The actual license plate of the Geo was AJF 1712.
 {¶ 7} Patrolman Eskridge followed the vehicle as it exited the parking lot and eventually initiated a traffic stop on the basis that the "plate was completely obstructed, [he] could not read it." The officer approached the vehicle and noticed that the driver, appellee, was breathing very rapidly and holding the steering wheel tightly with both hands. He asked appellee for his license and advised him that he was stopped because his license plate was obstructed by snow. Patrolman Eskridge attested that: appellee's hands trembled as he handed his license to the officer; appellee apologized; and, appellee attempted to exit the automobile so he could scrape the snow off the license plate. Patrolman Eskridge shut the car door, told appellee to remain in the vehicle, and noted that appellee's hands continued to tremble as he looked through the glove compartment for the vehicle's registration and proof of insurance.
 {¶ 8} Patrolman Eskridge attested that he asked appellee if there were any weapons in the vehicle, and that, rather than reply, appellee looked into his lap. When the officer repeated the inquiry, appellee glanced over his right shoulder toward the rear of the vehicle and then returned his gaze to his lap without answering.
 {¶ 9} Patrolman Eskridge began a conversation with appellee during which appellee reached for the ashtray. The officer then observed two hand-rolled cigarettes, which he believed to be marijuana, in the ashtray and inquired as to whether there were any drugs in the car. Again, appellee looked into lap without responding. After the officer repeated the question, appellee answered no.
 {¶ 10} Patrolman Eskridge attested that he asked appellee if he would have any objection to him searching the car and that appellee replied he was in a hurry and wanted to go home. When the officer told appellee he wanted a yes or no answer, appellee repeated that he was in a hurry to get home. Patrolman Eskridge then told appellee that he would have a canine walk around the vehicle. Appellee immediately stated that he had a three-quarter ounce bag of marijuana under the seat. This amount of marijuana would be a minor misdemeanor, subject to citation and a fine.
 {¶ 11} The officer advised appellee not to say anything further and asked him to exit to the rear of the vehicle. At that point, the police chief exited the marked patrol car. Appellee did not object to a pat-down search for weapons.
 {¶ 12} During the pat-down search, Patrolman Eskridge felt hard objects in appellee's left front pants pocket. After receiving appellee's permission to remove the objects, the officer discovered "six hallow [sic] point rounds of .44 Magnum ammunition from the left from pants pocket and also two .308 rounds." Appellee was advised of his Miranda rights, handcuffed, and again asked whether there were any weapons in the vehicle.
 {¶ 13} Patrolman Eskridge stated that appellee then advised him that "his brother had been trying to sell two .44 Magnums earlier in the week," but he was unsure if the weapons were inside the vehicle. At that point, the officer began to search the vehicle. He stated that his chief informed him that appellee stated there were two handguns in the car. Patrolman Eskridge attested that his search of the vehicle revealed: two hand-rolled marijuana cigarettes, a bag of marijuana measuring 23.9 grams, rolling papers; and, two unloaded handguns in unlocked plastic cases. Appellee was placed under arrest for possession of a concealed weapon. No further evidence or testimony was admitted at the hearing.
 {¶ 14} The trial court orally granted the motion to suppress, concluding that:
 {¶ 15} "[Patrolman Eskridge] had no reason to stop [appellee] except for a partially covered license plate. He informed the individual that's why he was stopped. The individual says I'll brush it off and he wouldn't let him do that, he continued to pursue it."
 {¶ 16} "The Court feels if you'd have just issued him a citation for it and let him brush it off that would be the end of it. He was after more than the license plate."
 {¶ 17} On December 4, 2001, the trial court issued a judgment entry granting appellee's motion to suppress.
 {¶ 18} From this judgment, appellant presents the following assignments of error for our review:
 {¶ 19} "[1.] THE TRIAL COURT ERRED BY CONDUCTING A HEARING ON A MOTION TO SUPPRESS THAT DID NOT CONFORM TO THE REQUIREMENTS OF CRIM.R. 47.
 {¶ 20} "[2.] THE TRIAL COURT ERRED IN GRANTING THE MOTION TO SUPPRESS."
 {¶ 21} In its first assignment of error, appellant challenges the sufficiency of the motion to suppress. Appellant claims the motion did not conform to the requirements of Crim.R. 47. The record before this court does not show that appellant ever raised this issue below. The failure to promptly object and call any error to the attention of the trial court, at a time when it could have been prevented or corrected, amounts to a waiver of all but plain error. State v. Williams (1977),51 Ohio St.2d 112, paragraph one of the syllabus.
 {¶ 22} "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Landrum (1990),53 Ohio St.3d 107, 111. In order to prevail on a claim of plain error, the appealing party must establish that the outcome of the trial clearly would have been different but for the alleged error. State v. Waddell
(1996), 75 Ohio St.3d 163, 166. In this case, the record is devoid of any evidence which would demonstrate appellant was so prevented from adequately defending against the suppression motion that the outcome of the trial was changed. Appellant's first assignment of error lacks merit.
 {¶ 23} In its second assignment of error, appellant contends the trial court erred in granting appellee's motion to suppress. Appellant argues that Patrolman Eskridge observed the two hand-rolled cigarettes while in the process of issuing a citation for an obstructed license plate and contends that the officer, relying upon his training and experience, immediately recognized the cigarettes as contraband. Therefore, the state argues, the officer had probable cause to believe that a crime, possession of marijuana, had been committed. Appellant further argues that the marijuana cigarettes were in plain view, giving the officer authority to search the vehicle for additional contraband.
 {¶ 24} At a hearing on a motion to suppress, the trial court functions as the trier of fact, and, therefore, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of any witnesses. State v. Mills (1992), 62 Ohio St.3d 357,366; see, also, State v. Mustafa, 11th Dist. No. 2000-P-0116, 2001 Ohio App. LEXIS 5661, at *3-4. An appellate court must accept the findings of fact of the trial court as long as those findings are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592; City of Ravenna v. Nethken, 11th Dist. No. 2001-P-0040, 2002 Ohio 3129, at 13. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met. Id.
 {¶ 25} A stop is constitutional if it is supported by either a reasonable suspicion or probable cause. This court has previously held that a police officer's observation of a violation of R.C. 4503.21
provides not only reasonable suspicion, but also probable cause to perform a traffic stop. State v. Durfee (Mar. 6, 1998), 11th Dist. No. 96-L-198 and 96-L-199, 1998 Ohio App. LEXIS 865. The test for probable cause is: "whether at the moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. Beck v. Ohio (1964), 379 U.S. 89, 91.
 {¶ 26} R.C. 4503.21 provides that "no person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of such motor vehicle the distinctive number and registration mark *** furnished by the director of public safety ***." The intent of the statute is to "require that license plates be visible to law enforcement personnel and others who may have reason to note the number for identification purposes." Durfee, supra, at *8.
 {¶ 27} In its consideration of the motion to suppress, the trial court did not issue findings, but concluded that: Patrolman Eskridge had no reason to stop appellee except for the partially covered license plate; the officer should have issued a citation for the obstructed plate and let appellee remove the snow; and, the officer was "after more than the license plate."
 {¶ 28} Since the trial court did not issue findings of fact, we must review the evidence and then apply the applicable legal standard. First, we will examine whether the evidence reveals that the stop was supported by either a reasonable suspicion or probable cause.
 {¶ 29} At the suppression hearing, Patrolman Eskridge attested that he stopped appellee due to the partial obstruction of his license plates. The officer explained that the lower portion of the license plate was covered with snow and that only the top inch of the license plate was unobstructed.
 {¶ 30} The officer correctly identified six of the seven characters of appellee's license plate. The only character incorrectly identified was an "F," which was incorrectly identified as an "E." Although there may have been snow on appellee's license plate, it was not obstructing any of the identifying characters. The officer saw the top of the F and, in fact, also saw the entire bottom half of the letter. He guessed that the snow was covering the bottom line of an E, however, the snow was not covering anything other than the lower border of the license plate. Thus, this is not a case where snow obstructed the identification of a motor vehicle's license plate; instead it is situation where the officer added something to a license plate that simply was not there. Under these circumstances, we cannot conclude that the license plate was obstructed. As such, the stop was not supported by probable cause or a reasonable suspicion.
 {¶ 31} Even assuming arguendo that the stop was supported by a reasonable suspicion of articulable facts that appellee had committed a crime, the detention leading to the arrest was longer than necessary to effectuate the purpose of the stop.
 {¶ 32} Once a law enforcement officer has validly stopped a vehicle, he may detain the occupants for a period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates and to issue the driver a warning or citation. State v. Warner
(July 6, 1998), 4th Dist. No. 97-CA-943, 1998 Ohio App. LEXIS 3337, at *5. The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification *** and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer
(1983), 460 U.S. 491, 500. The scope and duration of an investigative stop should be limited to effectuate the purpose for which the initial stop was made. State v. Venham (1994), 96 Ohio App.3d 649, 655. This is to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime. See State v. Gonyou (1995), 108 Ohio App.3d 369.
 {¶ 33} In the instant case, Patrolman Eskridge stopped appellee and asked him for his driver's license and registration. He did not wipe the license plate to obtain the number and/or view the registration information. This court is troubled by the action of an officer who does not investigate the cause of his stop. Had the officer examined the license plate, he would have realized that it was fully legible.
 {¶ 34} Further, the officer did not observe the marijuana cigarettes until an inordinate amount of time has elapsed. The officer continued to question appellee after he had verified appellant's license and registration. Although a police officer generally may ask questions of a person who is not in custody, without having that questioning amount to a seizure for Fourth Amendment purposes, the scope and duration of the traffic stop "must be carefully tailored to its underlying justification *** and last no longer than is necessary to effectuate the purpose of the stop." See Florida v. Royer, supra. We conclude that the officer's questioning was designed to discover evidence beyond the purposes for which the traffic stop was based. Appellant's second assignment is, therefore, without merit.
 {¶ 35} Based on the foregoing, the judgment of the Portage County Court of Common Pleas is hereby affirmed.
DONALD R. FORD, J., concurs.
DIANE V. GRENDELL, J., concurs in judgment only.