OPINION
{¶ 1} Plaintiff-appellant, State of Ohio, appeals a decision of the Mahoning County Common Pleas Court granting defendant-appellee's, Lamont Walker, motion to suppress evidence.
 {¶ 2} On January 31, 2003, Officer Robert O'Malley, a parole officer for the Adult Parole Authority (APA), went to 587 Willis Avenue in Youngstown, Ohio, to check on Floyd Robinson (Robinson), who was on post-release control to the APA. Officer O'Malley had received an anonymous tip that Robinson was dealing drugs from that address.
 {¶ 3} Officer O'Malley and another parole officer, John Garas, arrived at Robinson's home at approximately 8:00 p.m. Officer O'Malley testified that they knocked on the door several times with no answer, although they could hear people moving around inside. After repeatedly knocking, O'Malley contacted the Youngstown Police Department for assistance in entering the home. Eventually, Robinson opened the door and the officers detected a strong odor of marijuana coming from the home. O'Malley advised Robinson that he would be conducting a search of Robinson's residence and handcuffed Robinson for safety reasons.
 {¶ 4} Shortly after Robinson was handcuffed, Officer O'Malley saw appellee walking from the street to the house. O'Malley met appellee on the porch and asked him his name and what he was doing there. Appellee gave O'Malley his correct name, and said he was there to visit his cousin. Officer O'Malley then checked appellee's name and social security number with headquarters to see if there were any wants or warrants for appellee, and there were none.
 {¶ 5} Officer O'Malley then told appellee that he was going to pat him down for his own safety and asked appellee if there was anything appellee should tell him before he began. Appellee informed Officer O'Malley that he had a gun. Officer O'Malley retrieved a Taurus 9MM handgun from appellee's right hip. After retrieving the handgun, appellee was arrested for carrying a concealed weapon.
 {¶ 6} As a basis for the pat down search, Officer O'Malley testified that Willis Avenue was located on the South Side of Youngstown in an area known for drug and gun activity. However, Officer O'Malley admitted that appellee himself was not acting nervously, suspiciously, nor had appellee violated any laws. Moreover, Officer O'Malley admitted that appellee was not free to leave until he was searched, a fact allegedly conveyed to appellee. (Tr. 22, 32.)
 {¶ 7} On March 6, 2003, a Mahoning County Grand Jury indicted appellee on a charge of carrying a concealed weapon, in violation of R.C. 2923.12(A)(D), a felony of the fourth degree. Appellee filed a motion to suppress evidence of his statements to officers. Subsequent to a hearing on appellee's motion, the trial court granted his motion on November 23, 2003. This appeal followed.
 {¶ 8} Appellant's sole assignment of error states:
 {¶ 9} "The trial court erred in granting the defendant's motion to suppress a firearm seized from the defendant's person as the officers involved had probable cause to search the defendant and seize the weapon."
 {¶ 10} Appellant argues that the encounter between Officer O'Malley and appellee was a consensual encounter until appellee admitted to possessing a firearm. At that time, appellant argues that Officer O'Malley then had either reasonable suspicion to conduct a Terry pat-down search or probable cause to justify a further search of appellee for weapons.
 {¶ 11} This court has previously concluded on numerous occasions that our standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v.Lloyd (1998), 126 Ohio App.3d 95, 100, 709 N.E.2d 913; State v.Winand (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, citingTallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608,645 N.E.2d 802. Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."State v. Hopfer (1996), 112 Ohio App.3d 521, 548,679 N.E.2d 321, quoting State v. Venham (1994), 96 Ohio App.3d 649, 653,645 N.E.2d 831. As a reviewing court, this Court must accept the trial court's factual findings and the trial court's assessment of witness credibility. State v. Brown (Sept. 7, 1999), 7th Dist. No. 96-B-22, citing State v. Anderson (1995),100 Ohio App.3d 688, 691, 654 N.E.2d 1034. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. State v. Williams (1993), 86 Ohio App.3d 37, 41,619 N.E.2d 1141, overruled on other grounds as stated in Village ofMcComb v. Andrews (Mar. 22, 2000), 3d Dist. No. 5-99-41.
 {¶ 12} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee "the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."California v. Hodari D. (1991), 499 U.S. 621, 111 S.Ct. 1547,113 L.E.2d 690; State v. Gross, 7th Dist. No. 01-CA-115, 2002-Ohio-3465, at ¶ 15. The Fourth Amendment prohibits only those searches and seizures which are unreasonable. Harris v.United States (1947), 331 U.S. 145, 67 S.Ct. 1098,91 L.Ed. 1399. Searches conducted without a warrant are per se unreasonable, subject to specifically established exceptions.State v. Smith (1978), 56 Ohio St.2d 405, 407, 10 O.O.3d 515,384 N.E.2d 280. The exceptions or categories of police-citizen contact relevant to this case are the consensual encounter, the investigatory detention, and a custodial arrest. See Florida v.Royer (1982), 460 U.S. 491, 501-507, 103 S.Ct. 1319,75 L.Ed.2d 229; United States v. Mendenhall (1980), 446 U.S. 544, 553,100 S.Ct. 1870, 64 L.Ed.2d 497. Courts are required to exclude all evidence seized in violation of the Fourth Amendment. Mapp v.Ohio (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081.
 {¶ 13} The first exception, consensual encounter, is where the police approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away. Mendenhall, 446 U.S. at 554,100 S.Ct. 1870, 64 L.Ed.2d 497. A request to examine one's identification does not make an encounter nonconsensual. Florida v. Rodriguez
(1984), 469 U.S. 1, 4-6, 105 S.Ct. 308, 83 L.Ed.2d 165;Immigration Naturalization Serv. v. Delgado (1984),466 U.S. 210, 221-222, 104 S.Ct. 1758, 80 L.Ed.2d 247. Nor does the request to search a person's belongings. Florida v. Bostick
(1991), 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389. TheFourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. Mendenhall, 446 U.S. at 554,100 S.Ct. 1870, 64 L.Ed.2d 497; Terry v. Ohio (1968),392 U.S. 1, 16, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889.
 {¶ 14} The second type of encounter or exception is a "Terry stop" or an investigatory detention, which constitutes a seizure that implicates the Fourth Amendment. State v. Taylor (1995),106 Ohio App.3d 741, 751, 667 N.E.2d 60. A "seizure" occurs only when, in view of all of the circumstances surrounding the incident, the police officer restrains the person's liberty, either by physical force or by show of authority, such that a reasonable person would not feel free to decline the officer's request and walk away. Mendenhall, 446 U.S. at 553,100 S.Ct. 1870, 64 L.Ed.2d 497; State v. Williams (1990),51 Ohio St.3d 58, 61, 554 N.E.2d 108. When a seizure occurs, the officer must have a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent.Terry, 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. "The articulable and reasonable suspicion must exist in the officer's mind at the time of the stop and cannot be based on facts obtained after the initial stop." State v. Anderson (1995),100 Ohio App.3d 688, 692, 654 N.E.2d 1034. "The investigating detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or dispel his suspicions." Taylor, 106 Ohio App.3d at 748, 667 N.E.2d 60. "The lawfulness of the initial stop will not support a `fishing expedition' for evidence of crime." State v. Gonyou (1995),108 Ohio App.3d 369, 372, 670 N.E.2d 1040, quoting State v.Smotherman (July 29, 1994), 6th Dist. No. 93WD082, citing Statev. Bevan (1992), 80 Ohio App.3d 126, 130, 608 N.E.2d 1099.
 {¶ 15} The Fourth Amendment allows a limited search for weapons if a law enforcement officer has specific and articulable facts, which, along with rational inferences therefrom, justify the search. Terry, 392 U.S. at 19, 88 S.Ct. 1868,20 L.Ed.2d 889. This exception balances the person's right to be free from unreasonable searches and seizures against protecting the police and public from harm. Id. The officer need not be absolutely certain that the individual is armed; the standard is whether a reasonably prudent man in the same circumstances would be warranted in the belief that his or others' safety is jeopardized. Id. Thus, an officer may initiate a protective search when, based upon the totality of the circumstances, there is a reasonable suspicion that the person is armed or dangerous.State v. Bobo (1988), 37 Ohio St.3d 177, 181, 524 N.E.2d 489.
 {¶ 16} The final exception occurs when a law enforcement officer has probable cause to further detain and search an individual. Probable cause means that there is a fair probability, based on the totality of the current facts and circumstances, that contraband or evidence of a crime would be found in a particular place. Illinois v. Gates (1983),462 U.S. 213, 214, 103 S.Ct. 2317, 76 L.Ed.2d 527. Absolute certainty is not required by the Fourth Amendment, what is required is a reasonable belief that a crime has been or is being committed.Carroll v. United States (1925), 267 U.S. 132, 161,45 S.Ct 280, 69 L.Ed.2d 527, State v. Moore (2000), 90 Ohio St. 3d 47,49, 734 N.E.2d 804. Probable cause must be based on objective facts that would justify the issuance of a warrant by a magistrate. State v. Welch (1985), 18 Ohio St.3d 88, 92, 18 OBR 124, 480 N.E.2d 384.
 {¶ 17} When assessing the reasonableness of a law enforcement officer's belief of probable cause, only facts within the officer's knowledge and obtained without violation of the suspect's rights under the Fourth Amendment to the United States Constitution may be considered. Lakewood v. Smith (1965),1 Ohio St.2d 128, 30 O.O.2d 482, 205 N.E.2d 388, paragraph three of the syllabus. Moreover, a search or seizure of a person must be supported by probable cause particularized with respect to that person. State v. Davis (2000), 140 Ohio App.3d 659, 664,784 N.E.2d 1160. Thus, a finding of probable cause to search or seize one person or place, does not, without more, permit the search and seizure of another by virtue of "mere propinquity" absent "probable cause particularized with respect to that person."Ybarra v. Illinois (1979), 444 U.S. 85, 91, 100 S.Ct. 338,62 L.Ed.2d 238.
 {¶ 18} As a preliminary consideration, it should be noted that Officer O'Malley had appropriate authority to initiate the warrantless search of Floyd Robinson's home. Under R.C.2301.27(A)(1), probation officers have all the powers of regular police officers and under R.C. 2951.02(A), parole officers, with the Adult Parole Authority, have the authority to search, with or without a warrant, the home of an offender if the officer has reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the conditions of the probation.
 {¶ 19} In addition, appellee's argument that all evidence is inadmissible because Officer O'Malley failed to give Miranda warnings to appellee does not apply to this case. Police are not required to administer Miranda warnings to everyone whom they question, only a custodial interrogation triggers the need for Miranda warnings. State v. Biros (1997), 78 Ohio St.3d 426,478, 678 N.E.2d 891. A "custodial interrogation" is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The determination as to whether a custodial interrogation has occurred, requiring Miranda warnings, requires an inquiry into how a reasonable person in the suspect's position would have understood the situation, and the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of a degree associated with a formal arrest. Biros,
supra.
 {¶ 20} At the time Officer O'Malley asked the appellee "if there was anything he should know?" and conducted the pat down search, appellee was clearly not restrained to the degree of a formal arrest. Therefore, Miranda warnings were not necessary.
 {¶ 21} Appellant first argues that O'Malley's questioning and search of appellee was a consensual encounter, which does not implicate the Fourth Amendment. Bostick, supra. As the trial court indicated, Officer O'Malley had the ability to approach appellee, engage him in conversation, and request information from him, all without implicating the Fourth Amendment.Mendenhall, supra. Thus, the initial stop, conversation, and request for appellee's name were a consensual encounter. However, this encounter lost its consensual nature once Officer O'Malley informed appellee that he was not free to go until O'Malley conducted a pat down search. Id. At this point, appellee was not and did not feel free to terminate the encounter with Officer O'Malley. As a non-consensual encounter, both appellee's statement admitting to possession of a firearm and the subsequent pat down search of appellee to recover the firearm were protected by the Fourth Amendment. Id. Therefore, unless these acts were predicated on a reasonable suspicion or probable cause, both appellee's statement and the firearm must be suppressed. Mapp,367 U.S. at 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081; Taylor,106 Ohio App.3d at 748, 667 N.E.2d 60.
 {¶ 22} Appellant next argues that Officer O'Malley's questioning and search for weapons were justified as an investigative detention, which does not violate theFourth Amendment. As previously stated, appellant must point to specific, articulable facts, which, along with rational inferences therefrom, justify the intrusion. Smith,56 Ohio St.2d at 407, 10 O.O.3d 515, 384 N.E.2d 280. Specifically, appellant must prove that at the time of the seizure, Officer O'Malley reasonably feared for the safety of himself or others. Id.
 {¶ 23} At the suppression hearing, Officer O'Malley testified that at no time did he feel threatened by appellee. (Tr. 22.) Furthermore, Officer O'Malley testified that appellee did not act suspiciously or nervously and had not violated any laws. (Tr. 21, 22.) In short, Officer O'Malley offered no specific, articulable facts that appellee posed a threat to his safety or was engaged in criminal activity. Therefore, any detention beyond the consensual encounter can not be justified as an investigative detention.
 {¶ 24} In spite of a similar finding by the trial court, appellant argues that Officer O'Malley formed a reasonable suspicion of criminal activity, which justified the pat-down search, when appellee stated that he was carrying a concealed weapon. However, at the time appellee confessed to carrying a firearm, he was already seized under the Fourth Amendment. Thus, any evidence subsequently collected from appellee must be excluded. State v. Robinette (1995), 73 Ohio St. 3d 650, 697,653 N.E.2d 695. In other words, appellee's statement while seized cannot retroactively correct the Fourth Amendment violation and provide reasonable suspicion for a further search.
 {¶ 25} Appellant further claims that this case is similar toState v. Riddle (1995), 104 Ohio App.3d 679, 662 N.E.2d 1139, where the Twelfth District held that police officers reasonably believed their safety was in danger when an unknown person approached a home where officers executed a search warrant. There, the court determined that the officer's protective search did not violate the fourth amendment, but only because the officers expressed a specific, articulable basis for their belief. Id., 104 Ohio App.3d 682, 662 N.E.2d 1139. Appellant appears to believe that this case creates an "executing a search warrant" exception for investigative detentions. Appellant contends that because a parole officer's search poses similar dangers to executing a search warrant, this exception should apply to the present case.
 {¶ 26} In spite of this argument, it is clear that the holding in Riddle is merely a restatement of the general rule that investigative detentions, including a reasonable search for weapons, must be based on specific, articulable facts with reasonable conclusions drawn from those facts. Id. Although the Twelfth District recognized the danger inherent in executing a search warrant, it does not go so far as to create a new exception under the Fourth Amendment based on that danger. Therefore, appellee's further detention and pat-down search did not fall within the warrantless exception for investigative detentions. Smith, supra.
 {¶ 27} Finally, appellant argues that further detention of appellee was justified under the probable cause exception to the warrant requirement. Appellant claims that Officer O'Malley's probable cause of criminal activity was based on appellee's admission that he was carrying a firearm during their consensual encounter. Appellant contends that because appellee was not under arrest or within police custody at the time this statement was given, it and all subsequent evidence seized are admissible.
 {¶ 28} As stated above, Officer O'Malley and appellee's encounter was not consensual at the time appellee gave his incriminating statement. Appellee's admission and all subsequent evidence seized are admissible only if based on probable cause. When assessing the reasonableness of a law enforcement officer's belief of probable cause, only facts within the officer's knowledge and obtained without violation of the suspect's rights under the Fourth Amendment to the United States Constitution may be considered. Lakewood v. Smith, 1 Ohio St.2d 128, 30 O.O.2d 482, 205 N.E.2d 388, paragraph three of the syllabus. Because Officer O'Malley testified that he did not reasonably believe that a crime has been or is being committed by appellee, he did not have probable cause required to detain appellee. Thus, Officer O'Malley already violated appellee's Fourth Amendment rights when he detained and asked appellee if there was "anything he should know" before the pat down. This statement cannot then be used to form probable cause for the subsequent search. Id.
 {¶ 29} Because Officer O'Malley's detention of appellee did not fall within one of the aforementioned established exceptions for warrantless searches, that detention violated theFourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution. The trial court correctly excluded all evidence seized in violation of these provisions.
 {¶ 30} Accordingly, appellant's sole assignment of error is without merit.
 {¶ 31} The judgment of the trial court is hereby affirmed.
Waite, P.J., concurs.
DeGenaro, J., concurs.