[Cite as *State v. Latona*, 2011-Ohio-1253.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| VINCENT LATONA | : | Case No. 2010-CA-0072 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richalnd County Court of Common Pleas, Case No. 2009-CR-754H

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     March 16, 2011

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JAMES J. MAYER, JR.             RANDALL E. FRY
Prosecuting Attorney             10 West Newlon Place
                                     Mansfield, OH 44902

By: BRENT N. ROBINSON
Assistant Prosecutor
38 South Park Street
Mansfield, OH 44902

*Delaney, J.*

{¶1} Defendant-Appellant Vincent Latona appeals his conviction and sentence by the Richland County Court of Common Pleas for Improperly Handling Firearms in a Motor Vehicle, a fourth degree felony in violation of R.C. 2923.16(B). Plaintiff-Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On October 12, 2009, the Richland County Grand Jury indicted Appellant for one count of Improperly Handling Firearms in a Motor Vehicle, in violation of R.C. 2923.16(B).

{¶3} Appellant filed a motion to suppress on December 15, 2009. The matter came on for hearing on February 24, 2010. The following facts were adduced at the hearing.

{¶4} On April 9, 2009, Trooper Dave Norman was traveling northbound on Interstate 71 in Richland County, Ohio. Trooper Norman is assigned to the canine unit and his police dog was in his vehicle. (T. 4). Trooper Norman observed a 1977 Dodge Van driving in the middle lane of the interstate at a slow rate of speed, approximately 54 miles per hour. (T. 4-5). The trooper followed the van and observed the vehicle drive from the middle lane halfway into the right lane. (T. 5). At that point, Trooper Norman activated his lights and conducted a traffic stop for marked lanes violation because Trooper Norman was concerned that the driver of the van was falling asleep. Id. The driver of the vehicle complied and pulled over to the berm. Trooper Norman parked behind the vehicle.

{¶5} Trooper Norman approached the vehicle and spoke to Appellant, the driver of the vehicle. The van had a Colorado registration and Appellant told the officer that he was driving from Colorado to Pennsylvania. Id. Appellant had a dog tied up in the rear of the van. (T. 6). Trooper Norman asked Appellant to return to his patrol car because the officer wanted to see how tired Appellant was and the officer was concerned about the dog in the van. (T. 6).

{¶6} Before Appellant exited the vehicle from the passenger's side, Appellant locked the driver's side door, removed the keys from the ignition, exited the vehicle, and then locked the passenger door. (T. 5-6, 13). Trooper Norman asked Appellant why he was locking the car and Appellant replied that he did not want anyone to steal it. Id. The officer testified that in the 16 years he had been an officer, he had never seen anyone lock the doors to a vehicle after they were stopped. (T. 13). Appellant also seemed to the officer to be more nervous than he had observed an individual usually to be when he conducted a traffic stop. (T. 7, 13-14). Appellant did not appear to the officer to be under the influence of alcohol. (T. 13).

{¶7} When the officer got Appellant into his vehicle, Trooper Norman contacted dispatch to call in Appellant's license plate and driver's license because the officer's on-board computers did not work in that area of the interstate. (T. 8). Trooper Norman could not remember specifically at what time in the stop dispatch returned information on Appellant, but dispatch told Trooper Norman that Appellant had a felony warrant out of Pennsylvania, but Pennsylvania would not pick Appellant up in Ohio. (T. 7). During the time that Trooper Norman was waiting for the information from dispatch, Trooper

Norman decided to walk his dog around Appellant's vehicle based on Appellant's nervousness and Appellant locking the vehicle. (T. 13).

{¶8} When Trooper Norman walked his dog to the passenger door of the van, the dog passively indicated the odor of illegal narcotics. (T. 9). Trooper Norman conducted a vehicle search. Id. While conducting the vehicle search, the officer saw the butt of a gun in the area behind the driver's seat. (T. 10). Trooper Norman pulled the gun out and observed it was a loaded, black powder, muzzle-loading pistol. Id. It had percussion caps on the outside. Id. The officer did not notice the weapon when he initially approached Appellant because of the dog tied in the back of the vehicle. (T. 17).

{¶9} Trooper Norman called the Richland County prosecutor's office to advise them he had found a weapon. (T. 17). The prosecutor's office recommended that the officer seize the weapon and release Appellant pending the outcome of the test firing of the weapon. Id.

{¶10} Appellant denied to Trooper Norman that the weapon was a firearm. (T. 18). Trooper Norman gave Appellant a written warning for the marked lanes violation and released Appellant. Id.

{¶11} Trooper Norman testified that the length of the stop was five to six minutes or ten to fifteen minutes. (T. 16).

{¶12} The weapon was test fired and it was determined to be a working firearm. (T. 19).

{¶13} On March 22, 2010, the trial court denied Appellant's motion to suppress. Appellant pleaded no contest to the charge and was found guilty by the trial court. On

May 13, 2010, the trial court sentenced Appellant to 12 months in prison but suspended the prison sentence and placed Appellant on 18 months of community control sanctions.

{¶14}  It is from this decision Appellant now appeals.

**ASSIGNMENT OF ERROR**

{¶15}  Appellant raises one Assignment of Error:

{¶16}  "I. THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE BY OVER-RULING THE DEFENDANT-APPELLANT'S MOTION TO SURPRESS (SIC) PROPERLY AND TIMELY FILED IN THIS MATTER."

**I.**

{¶17}  Appellant argues the trial court erred in denying Appellant's motion to suppress.  We disagree.

{¶18}  Appellate review of a trial court's decision to grant or deny a motion to suppress involves a mixed question of law and fact.  *State v. Long* (1998), 127 Ohio App.3d 328, 713 N.E.2d 1.  During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility.  *State v. Brooks*, (1996), 75 Ohio St.3d 148, 661 N.E.2d 1030.  A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Metcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268.  Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard.  *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶19} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; and *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 623, 620 N.E.2d 906.

{¶20} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. We first note that Appellant does not seek to show that the underlying traffic stop itself was improper. Rather, the parties dispute whether the stop's scope and duration expanded beyond that which was necessary to effectuate the original purpose of the stop.

{¶21} The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229; see, also, *State v. Gonyou* (1995), 108 Ohio App.3d 369, 372, 670 N.E.2d 1040.

{¶22} Appellant relies upon the rule set forth in *Royer* to argue that law enforcement officers are prevented from conducting "fishing expeditions" for evidence of a crime. *Gonyou*, supra. In *Gonyou*, 108 Ohio App.3d at 372, 670 N.E.2d at 1042, the court summarized the circumstances under which the continued detention may constitute an illegal "fishing expedition": "Various activities, including following a script, prolonging a traffic stop in order to 'fish' for evidence, separating an individual from his car and engaging in 'casual conversation' in order to observe 'body language' and 'nervousness,' have been deemed (depending on the overall facts of the case) to be manipulative practices which are beyond the scope of * * * ' * * * the purpose for which the stop was made.' *State v. Correa* (1995), 108 Ohio App.3d 362, 670 N.E.2d 1035, 1039."

{¶23} The scope of a routine traffic stop is generally limited, in certain instances however, an officer may validly expand the scope of the stop. See *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, 881-82, 95 S.Ct. 2574, 2580-82, 45 L.Ed.2d 607. The officer may expand the scope of the stop and may continue to detain the individual if the officer possesses a reasonable suspicion, based upon articulable facts, that the individual is engaged in criminal activity. See *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88

S.Ct. 1868, 20 L.Ed.2d 889.  The court stated in *State v. Robinette*, (1997), 80 Ohio St.3d 234, 685 N.E.2d 762, paragraph one of the syllabus:

{¶24}  "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure."

{¶25}  Thus, if a law enforcement officer, during a valid traffic stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual."  Id., 80 Ohio St.3d at 241, 685 N.E.2d at 768.  "Consequently, when a law enforcement officer stops an individual for a minor traffic offense, the officer may not generally expand the scope of the stop unless the officer observes additional facts giving rise to a reasonable suspicion of other criminal activity."  *State v. Guckert* (Dec. 20, 2000), Washington App. No. 99CA49.

{¶26}  Upon the record in this case, we find that Trooper Norman articulated facts that gave rise to reasonable suspicion of other criminal activity.  Appellant appeared unusually nervous to the officer.  When Appellant exited the vehicle, Appellant removed the keys from the ignition and locked the driver's and passenger's doors. When asked why he was locking the doors, Appellant responded that he was afraid someone would steal his van.  Trooper Norman testified that he had never experienced anyone locking the doors to their vehicle during a traffic stop.

{¶27} We also find that at the time Trooper Norman walked his dog around Appellant's vehicle, Trooper Norman had not fulfilled the purpose of the initial stop in that Trooper Norman was waiting for the information to return from the dispatch and he had not cited Appellant for the marked lanes violation. The United States Supreme Court has stated that a dog sniff does not constitute a search. *United States v. Place* (1982), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110. Thus, because a dog sniff is not a search, "an officer need not have formed a reasonable suspicion that drug-related activity is occurring in order to request that a drug dog be brought to the scene or to conduct a dog sniff of the vehicle." *Guckert*, supra citing *State v. Keller* (Jan. 14, 2000), Montgomery App. No. 17896. Thus, when a motorist is lawfully detained pursuant to a traffic stop and when the purpose of the traffic stop has yet to be fulfilled, the Fourth Amendment is not violated when the officer employs a trained narcotics canine to sniff the vehicle for drugs. *Guckert*, supra.

{¶28} In this case, the police dog was at Trooper Norman's immediate disposal and while Trooper Norman waited for the information from dispatch, he walked his dog around Appellant's vehicle. This did not unreasonably prolong Appellant's detention, which the officer testified was at the maximum, fifteen minutes in length.

{¶29} Once the police dog indicated the presence of drugs in Appellant's lawfully stopped vehicle, the officer possessed probable cause to search Appellant's vehicle. *State v. Cicora* (July 31, 2000), Stark App. No. 2000CA00043.

{¶30} We find that the officer did not unreasonably detain Appellant during the traffic stop and subsequent canine search. Accordingly, we find the trial court did not err in overruling Appellant's motion to suppress.

{¶31}  Appellant's sole Assignment of Error is overruled.

{¶32}  The judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J.

Gwin, P.J. and

Farmer, J. concur.

_____
 HON. PATRICIA A. DELANEY


_____
 HON. W. SCOTT GWIN


_____
 HON. SHEILA G. FARMER


PAD:kgb

[Cite as *State v. Latona*, 2011-Ohio-1253.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| VINCENT LATONA | : | |
| | : | |
| Defendant-Appellant | : | Case No. 2010-CA-0072 |

For the reasons stated in our accompanying Memorandum-Opinion, the

judgment of the Richland County Court of Common Pleas is affirmed.

Costs to Appellant.


_____
HON. PATRICIA A. DELANEY


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER