DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Gallia County Common Pleas Court judgment of conviction and sentence. Following a no contest plea, the trial court found Tabitha Aguirre, defendant below and appellant herein, guilty of possession of cocaine in violation of R.C. 2925.11.
 {¶ 2} Appellant raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT FAILED TO SUPPRESS THE STATEMENT OF DEFENDANT/APPELLANT, TABITHA AGUIRRE."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE AT THE TRIAL, THE COCAINE THAT WAS IDENTIFIED AND USED BY THE STATE OF OHIO IN CASE NO. 02CR94, THAT BEING STATE OF OHIO VS CLIFFORD FRALEY."
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE DEFENDANT'S MOTION TO SUPPRESS THE COCAINE FOUND IN THIS CASE."
FOURTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT ERRED WHEN IT SENTENCED TABITHA AGUIRRE TO SIX MONTHS INCARCERATION IN THE MARYSVILLE REFORMATORY FOR WOMEN FOR EXERCISING HER CONSTITUTIONAL RIGHT TO A JURY TRIAL."
 {¶ 3} On June 22, 2002, Ohio State Highway Patrol Trooper Nicholas S. Johnson and Cadet Marvin Pullins were on routine patrol when Trooper Johnson clocked a 2002 Chrysler Sebring traveling 81 miles per hour in a 65 mile per hour speed zone. The trooper decided to stop the vehicle.
 {¶ 4} Trooper Johnson initially observed just the driver of the vehicle, Christopher Fraley, and saw that he was not wearing his seat belt. Once the trooper approached the vehicle, he noticed appellant, the passenger. While speaking with Fraley, he noticed that the vehicle "was very dirty, had a lived in look, unorganized" and that appellant "appeared withdrawn from the situation." He stated that appellant did not "act normal" or "concerned." The trooper explained that she "[t]urned around and spoke to [him] a couple of times and then would turn back around just like flipping a switch on and off."
 {¶ 5} When Trooper Johnson asked appellant and Fraley about their destination, they stated that they were going to West Virginia, but neither could state exactly where they were going. Additionally, appellant stated that they were on vacation, yet the trooper did not see any luggage.
 {¶ 6} Trooper Johnson then returned to his cruiser and discussed his observations with the cadet. Because his suspicions were heightened, he called for a K-9. He then began writing the citation for speeding. As he was writing the citation, appellant "disappeared, she drops down in the seat out of my view * * *. And then you can see some movement in the car."
 {¶ 7} With his suspicion further heightened, the trooper returned to the vehicle to speak with the passengers. He then observed a small piece of what he believed to be marijuana on Fraley's shoulder. He took it and performed a field test, which was positive, for marijuana. At that point, he decided to search Fraley. During the search of Fraley, he discovered a large amount of cash and a small vial of what he believed to be cocaine.
 {¶ 8} The trooper then removed appellant from the vehicle and searched the vehicle. Under appellant's seat, the trooper located a "white plastic rolling box that contained some cocaine, some marijuana, some paraphernalia inside it." The officers also found nine firearms in the trunk and a loaded weapon under the driver's seat.
 {¶ 9} Sergeant Rutherford, who had arrived on the scene, advised appellant that she was under arrest and he read her the Miranda warnings. The officers then transported appellant to the Gallia County Jail.
Ohio State Highway Patrol Trooper Sherry Wells interviewed appellant. Before she questioned appellant, appellant signed a "Constitutional Rights Waiver" form. The form recited the Miranda warnings and provided that appellant:
"read the statement of my rights shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer at this time. I understand and know what I am doing. No promise or threats have been made to me and no pressure or coercion of any kind has been used against me."
 {¶ 10} Appellant then stated to Trooper Wells that under her seat in a white container was "all my stuff," which included marijuana, cocaine and five Xanax pills. She stated that she used the drugs — "a lot of both" — on the drive to West Virginia.
 {¶ 11} On August 16, 2002, the Gallia County Grand Jury returned an indictment charging appellant with possession of cocaine. Appellant pled not guilty.
 {¶ 12} On September 9, 2002, appellant filed a motion to suppress the statements she gave to law enforcement officials and the evidence seized from the motor vehicle. She claimed that she did not give her statements voluntarily and that Trooper Wells should have tape recorded her statement. She further argued that the officers unlawfully prolonged the traffic stop and that they lacked probable cause to search the vehicle.
 {¶ 13} On December 20, 2002, the trial court held a hearing to consider appellant's motion to suppress evidence. At the hearing, Trooper Johnson provided the following list of reasons why he continued to detain appellant and Fraley: (1) a vehicle with a dirty interior is one indicator of possible drug activity; (2) the passengers' inability to state their exact destination; (3) appellant stated that they were on vacation, yet they did not have any luggage; (4) he observed furtive movements; (5) he saw a small piece of marijuana on Fraley's shoulder; and (6) he observed gang-related tattoos on Fraley.
 {¶ 14} Trooper Johnson also explained that eight minutes elapsed between the time he returned to his patrol cruiser to start writing the citation and the time he decided to return to appellant's vehicle. He stated that it usually takes ten to twelve minutes to write a citation.
 {¶ 15} Trooper Wells testified that she arrived at the post around 9:00 p.m. and then read appellant her rights. She stated that she reviewed with appellant each sentence of the waiver form and then asked appellant whether she understood the information contained on the form. Appellant stated that she understood and then signed the waiver of rights form. Trooper Wells explained that appellant "was able to comprehend everything. She had no questions, was freely willing to sign, stated she understood each [statement] as we went."
 {¶ 16} Trooper Wells then wrote the question she asked appellant, told appellant what the question was, and wrote appellant's answer. The trooper gave the statement to appellant for review and appellant signed each page.
 {¶ 17} On cross-examination, appellant's counsel advised Trooper Wells that he thought she was "lying about [appellant's] understanding her Miranda rights. I'm saying that she didn't waive her Miranda rights until you beat her with the pistol. How are you going to prove to me differently? Do you have a tape recording that you had gone over those with her?" Trooper Wells stated that she did not tape record appellant's waiver of the Miranda rights, but asserted that she was not required to tape record appellant's waiver. She further noted that she is sworn to tell the truth.
 {¶ 18} Appellant testified that the officers read her the Miranda
warnings when they arrested her at the scene. She stated that when she arrived at the sheriff's department, the officers put her in a cell and she fell asleep until Trooper Wells arrived. She stated that the trooper read her the Miranda warnings and that she stated that she did not want to waive her rights. She claimed that the trooper told her that she "had to sign it to acknowledge my rights on that piece of paper."
 {¶ 19} On January 14, 2003, the trial court overruled appellant's motion to suppress. On February 3, 2003, appellant entered a no contest plea. On February 21, 2003, the trial court sentenced appellant to six months imprisonment. The court found that: (1) recidivism is more likely due to appellant's drug usage pattern and she either does not acknowledge it or she refuses treatment; (2) appellant shows no genuine remorse; (3) appellant has multiple traffic offenses; and (4) multiple firearms were discovered, including a loaded weapon in the passenger compartment. The court stated that it considered the principles and purposes of sentencing under R.C. 2929.11, balanced the seriousness and recidivism factors under R.C. 2929.12, considered the factors under R.C. 2929.13, and found a prison term was appropriate. Appellant filed a timely notice of appeal.
 I {¶ 20} Because appellant's first and third assignment of error both challenge the propriety of the trial court's decision overruling her motion to suppress evidence, we will address the assignments of error together.
 A STANDARD OF REVIEW {¶ 21} We initially note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Treesh (2001), 90 Ohio St.3d 460, 472, 739 N.E.2d 749; Statev. Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; State v.Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Dunlap, supra; Long, supra; State v. Medcalf (1996),111 Ohio App.3d 142, 675 N.E.2d 1268. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11. See, generally, United States v. Arvizu (2002), 534 U.S. 266,122 S.Ct. 744, 151 L.Ed.2d 740; Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911.
 B THE TRIAL COURT DID NOT ERR BY DENYING APPELLANT'S MOTION TO SUPPRESS THE STATEMENTS THAT SHE GAVE TO TROOPER WELLS {¶ 22} In her first assignment of error, appellant argues that the trial court erred by failing to suppress the statements that she gave to Ohio State Highway Patrol Trooper Wells. Appellant claims that she did not voluntarily and knowingly make the statements. She claims that the state failed to show how long after the traffic stop she gave her statement and how long she was questioned. She further asserts that her statement is invalid because: (1) no one witnessed the trooper giving appellant the Miranda warnings; (2) the trooper did not tape record the interview; (3) the trooper did not permit appellant to write the statement on her own; and (4) her statement was not witnessed by anyone other than Trooper Wells.
 {¶ 23} The rule set forth in Miranda v. Arizona (1966),384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694, protects an individual who "is taken into custody or otherwise deprived of his freedom by the authorities in any significant way" from jeopardizing his Fifth Amendment privilege against self-incrimination. Specifically, the Miranda rule provides:
"* * * The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."
Id. at 444.
 {¶ 24} In the case at bar, the trial court concluded that Trooper Wells properly advised appellant of her Miranda rights and that appellant validly waived her rights. After our review of the record, we agree with the trial court's conclusion. Appellant signed a waiver of rights form. See State v. Scott (1980), 61 Ohio St.2d 155, 400 N.E.2d 375, paragraph one of the syllabus (stating that "an express written or oral statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver"). Trooper Wells stated that before appellant signed the form, she reviewed the form with appellant and appellant stated that she understood. Although Trooper Wells did not tape record appellant's waiver, the constitution does not require it.[1] See United States v. Thornton (E.D.Mich 2001), 177 F. Supp.2d 625,628 (stating that "electronic recording is not a constitutional requirement").
 {¶ 25} Furthermore, appellant's argument that Trooper Wells's testimony is not credible is a matter reserved to the trier of fact, not to a court reviewing a cold record. See, e.g., Treesh, supra. Therefore, we disagree with appellant that she was not properly advised of herMiranda rights.
 {¶ 26} We further disagree with appellant that her statement was involuntary. For a defendant's inculpatory statements to be admissible at trial, it must appear that the defendant gave the statements voluntarily. See State v. Chase (1978), 55 Ohio St.2d 237, 246,378 N.E.2d 1064. "Evidence of police coercion or overreaching is necessary for a finding of involuntariness, and not simply evidence of a low mental aptitude of the interrogee." State v. Eley (1996),77 Ohio St.3d 174, 178, 672 N.E.2d 640; see, also, Colorado v. Connelly
(1986), 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473; State v. Hill
(1992), 64 Ohio St.3d 313, 318, 595 N.E.2d 884, 890. Furthermore, in determining the voluntariness of an accused's confession, the court must employ the "totality of the circumstances" test. See State v. Bays
(1999), 87 Ohio St.3d 15, 22, 716 N.E.2d 1126; Eley,77 Ohio St.3d at 178; State v. Clark (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844. Under the "totality of the circumstances" test, the reviewing court should consider: (1) the age, mentality, and prior criminal experience of the individual; (2) the length, intensity, and frequency of the interrogation; (3) the existence of physical deprivation or mistreatment; and (4) the existence of threat or inducement. See Statev. Lynch (2003), 98 Ohio St.3d 514, 522, 787 N.E.2d 1185, ¶ 54;Bays, supra; State v. Edwards (1976), 49 Ohio St.2d 31, 40,358 N.E.2d 1051.
 {¶ 27} In the case at bar, the totality of the circumstances demonstrates that appellant voluntarily gave her statements to the law enforcement officer. The record contains: (1) no evidence of coercion or overreaching; (2) no evidence of physical deprivation or mistreatment; and (3) no evidence of threat or inducement. Appellant is in her early twenties, graduated from high school, and completed six months of college. She appears to be fully capable of understanding the implications of waiving her rights and admitting that she possessed the cocaine.
 {¶ 28} Although the record does not reveal the length of time that Trooper Wells questioned appellant, we do not believe that its absence renders appellant's statement involuntary. We additionally note that a lengthy interview does not necessarily render a defendant's statement involuntary. See State v. Green (2000), 90 Ohio St.3d 352, 366,738 N.E.2d 1208 (upholding confession given during twelve-hour interview); State v. Cowans (1967), 10 Ohio St.2d 96, 101, 227 N.E.2d 201,205 (upholding confession given during four-hour interview); Haynes v.Washington (1963), 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (upholding confession given during sixteen-hour interview); Harris v. SouthCarolina (1949), 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815 (upholding confession given during three-day interview); Turner v. Pennsylvania
(1949), 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810 (upholding confession given during five-day interview); Ashcraft v. Tennessee (1944),322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (upholding confession given during thirty-six-hour interview).
 {¶ 29} Moreover, we disagree with appellant that her confession is involuntary because Trooper Wells did not tape record it or because appellant did not hand-write her own statement. Although we again note that it is certainly the better practice for law enforcement officers to tape record a defendant's confession, the constitution does not require it. See, generally, State v. Wiles (1991), 59 Ohio st.3d 71, 83-84,571 N.E.2d 97; State v. Cedeno (Oct. 23, 1998), Hamilton App. No. C-970465; State v. Hodges (1995), 107 Ohio App.3d 578, 588, 669 N.E.2d 256. Cf. State v. Wooten (Mar. 25, 2002), Athens App. No. 01CA31 (holding that the constitution does not require law enforcement officers to tape record traffic stops). Additionally, appellant's statement is not involuntary simply because Trooper Wells wrote the statement. Trooper Wells merely prepared a written record of the questions she asked appellant and appellant's responses. She then gave the written record to appellant for review and appellant signed each and every page. If appellant had disagreed with any of the statements, she could have so indicated.
 {¶ 30} Consequently, the trial court did not err by overruling appellant's motion to suppress the statements that she gave to Trooper Wells.
 B {¶ 31} In her third assignment of error, appellant contends that the trial court erred by failing to suppress the evidence obtained as a result of the traffic stop. Appellant argues that the seizure was illegal because the officers unnecessarily prolonged the traffic stop.
 {¶ 32} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., Arvizu, 122 S.Ct. at 750; Terry v. Ohio (1968),392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889. "Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katzv. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507,19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner (1999), 87 Ohio St.3d 295, 297,720 N.E.2d 507; Xenia v. Wallace (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus.
 {¶ 33} A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment. See Whren v. United States (1996),517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89. Such a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. In Whren, the Supreme Court recognized that theFourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. The court stated:
"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of `persons' within the meaning of [theFourth Amendment]. * * * An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. * * *."
Id. at 809-10 (citations omitted); see, also, Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091, 1097-98.
 {¶ 34} In the case at bar, appellant does not dispute that Trooper Johnson observed the driver of the vehicle in which appellant was a passenger commit a traffic violation that provided the officer with a lawful basis to stop and detain appellant and the driver. Rather, appellant disputes whether the scope and duration of the stop lasted longer than necessary to effectuate the original purpose of the stop.
 {¶ 35} The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." Floridav. Royer (1983), 460 U.S. 491, 500, 103 S.Ct. 75 L.Ed.2d 229; see, also,State v. Gonyou (1995), 108 Ohio App.3d 369, 372, 670 N.E.2d 1040; Statev. Venham (1994), 96 Ohio App.3d 649, 654, 645 N.E.2d 831; State v.Birchfield (Aug. 26, 1997), Ross App. No. 97 CA 2281, unreported. The rule set forth in Royer is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime.[2]Gonyou, supra; Sagamore Hills v. Eller (Nov. 5, 1997), Summit App. No. 18495, unreported; see, also Fairborn v. Orrick (1988), 49 Ohio App.3d 94,95, 550 N.E.2d 488, 490 (stating that "the mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer `open season' to investigate matters not reasonably within the scope of his suspicion").
 {¶ 36} When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. See State v. Carlson (1995),102 Ohio App.3d 585, 598, 657 N.E.2d 591. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." Id. (citing State v. Cook (1992), 65 Ohio St.3d 516,521-522, 605 N.E.2d 70 (fifteen-minute detention reasonable); UnitedStates v. Sharpe (1985), 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605
(twenty-minute detention reasonable).
 {¶ 37} In the case sub judice, the record shows that approximately eight minutes elapsed between the time that the trooper first left the vehicle and the time that he returned to the vehicle to further investigate his suspicions. Also, when he returned to the vehicle, he had not yet completed the purpose of the stop-to issue a traffic citation. Trooper Johnson stated that as he began to write the citation, he noticed furtive movements that heightened his suspicions. Therefore, we agree with the conclusion that Trooper Johnson did not unlawfully expand the scope of the stop and his continued detention was reasonable.
 {¶ 38} Furthermore, once Trooper Johnson discovered the presence of marijuana, he possessed reasonable suspicion to continue to detain appellant and the driver. See Terry v. Ohio (1968), 392 U.S. 1, 21,88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Robinette (1997), 80 Ohio St.3d 234,685 N.E.2d 762; State v. Chatton (1984), 11 Ohio St.3d 59, 63,463 N.E.2d 1237; State v. Eggleston (1996), 109 Ohio App.3d 217,671 N.E.2d 1325; State v. Epling (1995), 105 Ohio App.3d 663,664 N.E.2d 1299; State v. Retherford (1993), 93 Ohio App.3d 586, 601,639 N.E.2d 498, 508.
 {¶ 39} Consequently, the trial court did not err by overruling appellant's motion to suppress the evidence discovered as a result of the traffic stop. Accordingly, based upon the foregoing reasons, we overrule appellant's first and third assignments of error.
 II {¶ 40} In her second assignment of error, appellant asserts that the trial court erred by admitting evidence that bore Fraley's case number. She claims that "two people cannot be charged and convicted of possession of the same substance based on the facts of this case."
 {¶ 41} To the extent appellant challenges the evidence used to support her conviction, we find that she has waived the issue. A plea of no contest constitutes an admission of the facts alleged in the indictment and waives any argument concerning the sufficiency of the evidence. See Crim.R. 11(B). The indictment alleged that she knowingly obtained or possessed cocaine. By pleading no contest, appellant admitted that she knowingly obtained or possessed cocaine. Thus, appellant's argument that the state did not have competent evidence to show that she possessed cocaine is without merit.
 {¶ 42} Furthermore, even assuming that admitting the evidence would be error, such error in the case at bar would be harmless. See Crim.R. 52(A). Appellant confessed to the crime. Thus, the evidence would have been merely cumulative.
 {¶ 43} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 44} In her fourth assignment of error, appellant argues that the trial court erred by sentencing her to six months imprisonment. She complains that the trial court ignored the factors set forth in R.C.2929.13(B)(1) and notes that Fraley received community control sanctions, while she received a prison sentence.
 {¶ 45} When an appellate court reviews a trial court's sentencing decision, a reviewing court may not modify or vacate the sentence unless the court "clearly and convincingly" finds that: (1) the sentence is not supported by the record; (2) the trial court imposed a prison term without following the appropriate statutory procedures; or (3) the sentence imposed was contrary to law. R.C. 2953.08(G); Griffin 
Katz, Ohio Felony Sentencing Law (1998 Ed.) 495, Section 9.16.
 {¶ 46} Although a trial court generally possesses discretion when sentencing an offender, a trial court must not disregard the statutory principles, procedures, presumptions, and factors. See, e.g., R.C.2929.12(A); State v. Persons (Apr. 26, 1999), Washington App. No. 98 CA 19, unreported. As we noted in Persons, an appellate court's review of a trial court's sentencing decision is no longer conducted pursuant to the traditional "abuse of discretion" standard. See Griffin Katz 495, Section 9.16 ("Judicial discretion is now greatly circumscribed. The sentencing act provisions significantly limit and channel the exercise of discretion through statutory guidelines in the form of purposes, principles, factors, and presumptions."). Rather, by providing statutory standards for the exercise of discretion, the Ohio General Assembly has now defined what constitutes an "abuse of discretion." See Persons, supra, n. 3 (citing Griffin Katz 495, Section 9.16).
 {¶ 47} Thus, a sentencing court abuses its discretion when the court fails to appropriately consider the "purposes, array of principles, factors, and presumptions," detailed throughout R.C. 2929.11
through R.C. 2929.20. Griffin Katz 495, Section 9.16; see, also,Persons, supra. In determining whether a sentencing court properly exercised its discretion, a reviewing court should examine the record to ascertain whether the trial court: (1) considered the statutory factors; (2) made the required findings; (3) relied on substantial evidence in the record to support its findings; and (4) properly applied the statutory guidelines. See, e.g., State v. Dunwoody (Aug. 5, 1998), Meigs App. No. 97 CA 11, unreported.
 {¶ 48} In the case at bar, appellant was convicted of a fourth degree felony drug offense. R.C. 2929.13(B) restricts sentencing for fourth and fifth degree felony offenders. R.C. 2929.13(B)(1) sets forth specific factors that a trial court must find prior to imposing a prison term upon a fourth or fifth degree felony offender. If the court finds that any of the following R.C. 2929.13(B)(1) factors apply, the court may choose to impose a prison term:
(a) In committing the offense, the offender caused physical harm to a person.
(b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
(d) The offender held a public office or position of trust and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.
(e) The offender committed the offense for hire or as part of an organized criminal activity.
(f) The offense is a sex offense that is a fourth or fifth degree felony violation of section 2907.03, 2907.04, 2907.05, 2907.22, 2907.31,2907.321, 2907.322, 2907.323, or 2907.34 of the Revised Code.
(g) The offender at the time of the offense was serving, or the offender previously had served, a prison term.
(h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.
(i) The offender committed the offense while in possession of a firearm.
 {¶ 49} In the case sub judice, the trial court stated that it considered R.C. 2929.13. The court found that multiple firearms were discovered in the vehicle and that a loaded weapon was in the passenger compartment. Although the trial court did not specifically state that appellant "committed the offense while in possession of a firearm," we do not believe that it was required to echo the language of the statute. Our review of the sentencing hearing transcript shows that the trial court considered R.C. 2929.13 and that the court found that firearms were involved in appellant's commission of the offense. Therefore, because the trial court found the presence of an R.C. 2929.13 factor, it was authorized to impose a prison sentence.
 {¶ 50} Furthermore, we disagree with appellant's argument that she was entitled to the same sentence that Fraley received. Each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes.
 {¶ 51} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] Even though the constitution does not require it, the better practice would be to tape record a suspect's waiver of rights. The failure to preserve by electronic means a suspect's confession opens to question issues that could easily be resolved if a confession had been recorded.
[2] In Gonyou, 108 Ohio App.3d at 372, 670 N.E.2d at 1042, the court summarized the circumstances under which the continued detention may constitute an illegal "fishing expedition":
"Various activities, including following a script, prolonging a traffic stop in order to `fish' for evidence, separating an individual from his car and engaging in `casual conversation' in order to observe `body language' and `nervousness,' have been deemed (depending on the overall facts of the case) to be manipulative practices which are beyond the scope of * * * `* * * the purpose for which the stop was made.' State v.Correa (1995), 108 Ohio App.3d 362, 670 N.E.2d 1035, 1039."