[Cite as *State v. Sunkle*, 2022-Ohio-2442.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Earle E. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| MELISSA SUNKLE, | : | Case No. 2021 CA 00092 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Licking County
Court of Common Pleas, Case No.
21-CR-00225

JUDGMENT: Affirmed

DATE OF JUDGMENT: July 14, 2022

APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

ROBERT N. ABDALLA                   WILLIAM T. CRAMER
Assistant Prosecuting Attorney          470 Olde Worthington Road, Suite 200
20 S. Second Street                      Westerville, Ohio 43082
Newark, Ohio 43055

*Baldwin, J.*

### STATEMENT OF THE CASE AND THE FACTS

{¶1} The Licking County Grand Jury returned a four-count indictment against Appellant Melissa A. Sunkle. Count One charged Aggravated Trafficking in Methamphetamine a violation of R.C. § 2925.03(A)(2),(C)(l)(d), and a felony of the second degree. Count Two charged Aggravated Possession of Methamphetamine a violation of R.C. § 2925.11(A),(C)(l)(c), and a felony of the second degree. Count Three charged Trafficking in Fentanyl-Related Compound in violation of R.C. § 2925.03(A)(2),(C)(9)(d), a felony of the third degree. Count Four charged Possession of Fentanyl-Related Compound in violation of R.C. § 2925.11(A),(C)(l l)(c ), a felony of the third degree.

{¶2} The Indictment also contained a Forfeiture Specification of $1,134.00 in U.S. Currency. Sunkle appeared for arraignment on May 4, 2021 and entered a plea of Not Guilty to all four charges.

{¶3} Sunkle moved to suppress evidence on July 1, 2021, alleging that "no traffic violation in fact occurred that would justify the intrusion into Ms. Sunkle's life," that the officer "expanded the encounter into a drug investigation" and "went too far," and that the canine did not actually "alert" to anything. The trial court conducted a hearing on the matter at which the state presented the testimony of Detective Michael Wingate and Detective Sergeant Adam Hoskinson.

{¶4} Detective Wingate and Detective Sergeant Hoskinson were on duty April 15, 2021. Hoskinson was working a drug interdiction with his K-9, Buckeye, at a local hotel where Hoskinson found that Sunkle was staying. The Central Ohio Drug

Enforcement Task Force (CODE) had received information that Sunkle was bringing fentanyl and methamphetamine to the area, making her a person of interest for the Task Force. Hoskinson witnessed Sunkle leave the hotel with a male, enter a silver SUV and proceed west on Locust street and turn south on Fourth Street. Hoskinson followed and witnessed Sunkle move from a left turn lane to a through lane without signaling, a violation of Ohio traffic law. He radioed Wingate and relayed the nature of the offense and a description of the vehicle, including the license plate.

{¶5} Wingate found the vehicle and stopped it at 10:32:47 according to the clock in the cruiser video. Sunkle provided her driver's license, but her passenger refused to identify himself. Wingate noticed that the passenger was visibly nervous, shaking and looking down while clutching a backpack that was between his feet. Wingate asked the passenger to step out of the vehicle and escorted him to his cruiser. Hoskinson and Detective Woodyard arrived at the scene and the time was 10:35:57.

{¶6} Hoskinson and Woodyard approached Sunkle and asked her to move her vehicle off the road, and noticed that her breathing was shallow and that she appeared overly nervous for being stopped for a traffic violation. Hoskinson moved to the passenger and requested that he provide identification and the passenger again refused. Hoskinson believed that Detective Conley may be able to identify the passenger, so Conley was called to the scene.

{¶7} At 10:39:44 Hoskinson conducted a free air sniff with his canine, Buckeye, after Sunkle was removed from the vehicle. After Buckeye signaled that he detected narcotics in the vehicle, Hoskinson requested and received Sunkle's permission to search the vehicle.

**{¶8}** After the hearing the trial court denied the motion, finding that:

* * the lane violation constitutes sufficient probable cause to stop the vehicle and issue a traffic citation. Further, that any initial delay in the process was due to the passenger in the vehicle refusing to provide any identification, and in any event, the K-9 alert appears to have been done seven minutes after the initial stop. The Court also notes that in general drivers may be removed from the vehicle for the purposes of writing citations. Accordingly, the Court finds the defendant's motion to be not well taken and is DENIED.(Suppression Entry, p. 2).

**{¶9}** Sunkle withdrew her not-guilty plea and entered a plea of no contest to all charges. The State presented a narrative of the facts supporting the indictment:

On April 15, 2021, Licking County Sheriff's Office Detective Wingate wearing the uniform of the day and operating a marked cruiser equipped with overhead lights effectuated a traffic stop on a silver Toyota RAV 4 for failing to utilize a turn signal at the intersection of Fourth and West Church Street in Newark, Licking County, Ohio. The driver was identified as Defendant, Melissa Sunkle, and the front seat passenger refused to provide any identification. The Defendant was under a license suspension. The Defendant advised police that she had multiple amounts of varying drugs in her hotel room that she picked for purposes of selling. A subsequent search warrant for the hotel room discovered large quantities of methamphetamine, a Schedule II controlled substance, approximate amount being 50 grams. Additionally, other drugs, including fentanyl, were located. The Central Ohio

Regional Crime Lab tested the substances and determined them to be 45.972 grams of methamphetamine and 8.33 grams of fentanyl-related compound. (October 19,2021 Hearing Transcript ("Plea Tr."), p. 10).

{¶10} The trial court asked Appellant whether she agreed with the facts set forth by the State, and Appellant affirmed that she did. (Plea Tr. p. 11).

{¶11} The trial court accepted the plea and determined that counts one and two merged and that counts three and four merged. The state elected to proceed on counts one and three.  The trial court sentenced Sunkle to an aggregate sentence of four and one-half to six years in prison and ordered a forfeiture of $1,134.00.

{¶12} Sunkle has filed an appeal and submitted one assignment of error:

{¶13} "I. APPELLANT'S RIGHTS UNDER THE FEDERAL AND STATE CONSTITUTIONS TO BE FREE OF UNREASONABLE SEARCH AND SEIZURE WERE VIOLATED BY THE UNJUSTIFIABLE DELAY OF A TRAFFIC STOP FOR A CANINE SNIFF."

### STANDARD OF REVIEW

{¶14} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court is the finder of fact in evaluating a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.* The trial court's findings of fact must be accepted by an appellate court if they are supported by competent, credible evidence. *Id.* "Accepting facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court,

whether the facts satisfy the applicable legal standard." *Id.* That is, the appellate court will review the application of the legal standard to the facts de novo. *Id.*

**{¶15}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. *State v. Goins,* 5th Dist. Morgan No. 05-8, 2006-Ohio-74, ¶ 10. First, an appellant may challenge the trial court's finding of fact. *Id.* Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. *Id.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. *Id.* When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist. 1994).

**{¶16}** Sunkle does not dispute the facts and instead contends that the trial court incorrectly decided the ultimate issue raised in the motion to suppress, so we review this case to determine whether the facts meet the appropriate legal standard.

**ANALYSIS**

**{¶17}** Sunkle's assignment of error focuses upon the use of the canine at the traffic stop, concluding that "[b]ecause no work was being done on the traffic violation while Buckeye was checking the vehicle, the canine sniff necessarily added time to the traffic stop and must be independently justified." (Appellant's Brief, p. 8). Sunkle is inviting this court to construe the applicable precedent, including cases cited in her brief, to require that all activity conducted at a traffic stop must be directed toward a goal of completing that stop and that any action not directed toward that end, including a free air sniff by a canine already at the scene, is an impermissible extension of the traffic stop

regardless of the amount of time that expires between the initiation of the stop and the discovery of evidence of narcotics. We have reviewed the relevant caselaw and find no support for Sunkle's interpretation.

{¶18} The relevant caselaw focuses upon the time necessary to complete the mission of issuing a traffic ticket or a warning and "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 837, 160 L.Ed.2d 842. The officer may inquire into matters unrelated to the traffic stop, "so long as those inquiries do not measurably extend the duration of the stop. See *Muehler v. Mena,* 544 U.S. 93, 100–101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005)." *Arizona v. Johnson,* 555 U.S. 323, 333, 129 S.Ct. 781, 788, 172 L.Ed.2d 694. "An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But * * * he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual. *Rodriguez v. United States,* 575 U.S. 348, 354–55, 135 S.Ct. 1609, 1614–15, 191 L.Ed.2d 492.

{¶19} And we have recently held that "the pertinent question is not whether the dog sniff occurs before or after the officer issues or could have issued the initial ticket, but whether the dog sniff adds time to the stop. *State v. Perkins*, 5th Dist. Richland No. 19CA38, 2019-Ohio-4328, appeal not allowed, 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 926." *State v. Lewis*, 5th Dist. Knox No. 20CA000013, 2021-Ohio-1360, ¶ 22 appeal allowed, 164 Ohio St.3d 1403, 2021-Ohio-2742, 172 N.E.3d 161, ¶ 22 and appeal dismissed as improvidently allowed, 2022-Ohio-1570.

**{¶20}** In the case before us, the officer testified that a traffic stop can be completed in twenty-five minutes, if there are no interruptions. While the reluctance of the passenger to provide his identification might be considered an interruption in the orderly completion of the traffic stop, we need not consider that issue because the time between the stop and the canine alert was brief. The record shows that the canine sniff occurred within approximately seven minutes of the initial stop, so the seizure was not prolonged beyond the time reasonably required to complete the mission of issuing a traffic citation. And once the dog alerted to the presence of narcotics in the vehicle, the officers had probable cause to search the vehicle. *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, ¶ 26. And, after the canine alert, Sunkle consented to the search of the vehicle and has conceded that she "advised police that she had multiple amounts of varying drugs in her hotel room that she picked for purposes of selling." The officers obtained a warrant to search the hotel room and discovered the narcotics that supported the charges filed against Sunkle.

**{¶21}** We find that the canine sniff did not impermissible extend the time for the traffic stop and deny Sunkle's first assignment of error.

{¶22} The decision of the Licking County Court of Common Pleas is affirmed.

By: Baldwin, J.

Wise, Earle, P.J. and

Delaney, J. concur.