[Cite as *State v. Harvey*, 2022-Ohio-3111.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2021CA00101 |
| | : | |
| SEAN HARVEY | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Stark County Court of
                                Common Pleas, Case No. 2020CR1852

JUDGMENT:                       AFFIRMED

DATE OF JUDGMENT ENTRY:         September 2, 2022

APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

KYLE L. STONE                           AARON KOVALCHIK
STARK COUNTY PROSECUTOR                 116 Cleveland Ave. NW, Suite 808
                                        Canton, OH 44702
TIMOTHY E. YAHNER
110 Central Plaza South, Suite 510
Canton, OH 44702-1413

*Delaney, J.*

{¶1} Defendant-Appellant Sean Harvey appeals his August 27, 2021 conviction and sentence by the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} On October 29, 2020, Defendant-Appellant Sean Harvey was indicted by the Stark County Grand Jury on two charges: (1) possession of a fentanyl-related compound, a first-degree felony in violation of R.C. 2925.11(A)(C)(11)(E); and (2) possession of heroin, a second-degree felony in violation of R.C. 2925.11(A)(C)(6)(d). Harvey entered a plea of not guilty to the charges.

{¶3} On December 21, 2020, counsel for Harvey filed a motion to suppress. The motion was withdrawn on January 22, 2021 and Harvey retained new trial counsel. A renewed motion to suppress was filed on June 11, 2021. On June 17, 2021, the trial court held a hearing on the motion to suppress, establishing the following facts.

### Motion to Suppress

{¶4} Trooper Jim Baker with the Ohio State Highway Patrol was on duty the night on January 13, 2019. Trooper Baker has been an OSHP K-9 handler for 11 years and on January 13, 2019, he was accompanied by his K-9 partner, Rexey. Rexey completed Gold Shield Training and OSHP training and certification so that he was OPOTA certified in narcotics, patrol, search, and obedience.

{¶5} On January 13, 2019, Trooper Baker and Rexey were patrolling the area of Interstate 77, south of U.S. Route 30, in Stark County, Ohio. Trooper Baker was driving his marked patrol car. Trooper Baker was patrolling in tandem with Sergeant Timberlake,

who was driving in a separate marked patrol car. At approximately 10:50 p.m., Trooper Baker initiated a traffic stop of a vehicle traveling northbound on I-77, north of U.S. Route 30, due to obscured registration tags on the license plate. Sergeant Timberlake was also on the scene.

{¶6} The State presented Exhibit B at the hearing, which was Trooper Baker's dash cam video from the January 13, 2019 stop. At time marker 4:53, Trooper Baker activated his lights and initiated the traffic stop. At time marker 5:44, the video showed the stopped vehicle and Trooper Baker approaching the vehicle on the passenger side. Trooper Baker testified that he observed four occupants in the vehicle: a female driver, a male passenger, one infant in a car seat, and one toddler in a car seat. He asked the driver for her license, proof of insurance, and vehicle registration. The driver only provided Trooper Baker her driver's license and she was identified as Monique Varner. Her driver's license showed her residence as Gahanna, Ohio, but in the video, Varner tells Trooper Baker that she has been living in Massillon since March. Varner did not have proof of insurance or the vehicle registration. The male passenger provided Trooper Baker his identification and he was identified as Sean Harvey.

{¶7} After Trooper Baker received identification from Varner and Harvey, at minute marker 7:38, he asked Varner to step out of the vehicle so he could speak with her further. He wanted to show her the vehicle defect that was the reason for the stop. The officers had not initiated a background check at that time. Before he showed Varner the obscured tag, Trooper Baker asked her where she was coming from. Varner said she was coming from her house in Massillon. Trooper Baker felt that was odd because Varner's vehicle passed him going northbound on I-77, about ten miles south of U.S.

Route 30. If she was coming from Massillon, from where he saw her on I-77 North and where he stopped her on I-77 North, Trooper Baker felt she would have taken U.S. Route 30 east to I-77. Varner then she said she was coming from Harvey's cousin's house. She could not tell Trooper Baker what Harvey's cousin's name was or where the cousin lived. Trooper Baker asked Varner where she was heading. Varner said she was getting something to eat. He again felt her statement was odd because it was after 10:00 p.m. and there were young children in the vehicle. Trooper Baker testified that when he asked Varner questions, she paused before answering and it appeared to him that she was trying to think of an answer.

{¶8}   Based on the discrepancies in Varner's stories, he placed Varner in the rear of his cruiser at minute marker 10:29. Trooper Baker went back to the stopped vehicle and asked Harvey where they were headed. Harvey said they had come from his cousin's house in Massillon and Varner was driving him home. At minute marker 12:15, Trooper Baker asked Harvey to exit the vehicle because his statement contradicted Varner's. Trooper Baker conducted a safety search on Harvey and Harvey was seated in the back of Sergeant Timberlake's cruiser.

{¶9}   Trooper Baker gave Sergeant Timberlake Varner and Harvey's information. As Sergeant Timberlake ran their information through LEADS, Trooper Baker got Rexey out of his patrol car to conduct a narcotic sniff on the exterior of the stopped vehicle. At minute marker 14:03, Trooper Baker and Rexey are seen at the rear of the vehicle. Rexey is trained to stop and sit when he smells the odor of narcotics, not the location of narcotics. At time marker 14:28, the dash cam video shows Rexey indicating on the passenger side of the vehicle by stopping and sitting. After Rexey indicated on the vehicle, Trooper Baker

praised him, put him up, and went back to the stopped vehicle. Trooper Baker and Sergeant Timberlake got the children out of the car. The officers then performed a probable cause search of the vehicle.

{¶10} The probable cause search revealed a female's boot containing a bag of heroin located in the trunk of the stopped vehicle. Trooper Baker read both Varner and Harvey their Miranda rights. Varner said the boot belonged to her cousin, who left it in the vehicle from the night before. Harvey admitted knowledge of the heroin.

{¶11} State's Exhibit B showed the length of time between Trooper Baker's approach of the stopped vehicle to Rexey's indication of the smell of narcotics was approximately 8.84 minutes.

{¶12} At the conclusion of the suppression hearing, the trial court permitted the parties to submit written closing arguments.

{¶13} On August 3, 2021, the trial court issued its judgment entry denying Harvey's motion to suppress. The trial court found Trooper Baker had probable cause to stop the vehicle, the length of the traffic stop was reasonable, and Harvey's statements after the administration of his Miranda rights were knowingly and voluntarily made.

{¶14} On August 20, 2021, the trial court held a change of plea and sentencing hearing where Harvey entered a plea of no contest to the charges. Via sentencing entry filed on August 27, 2021, the trial court found Harvey guilty and sentenced him to an indefinite mandatory minimum prison term of four years up to a maximum prison term of six years pursuant to the Reagan Tokes Act. Harvey filed a notice of appeal of the August 27, 2021 sentencing entry.

**Post-Appeal Proceedings**

{¶15} On October 22, 2021, while the present appeal was pending, Harvey appeared before the trial court for resentencing due to Harvey's January 13, 2019 offense occurring before the March 22, 2019 effective date of the Reagan Tokes Act. Via sentencing entry filed on November 1, 2021, the trial court ordered Harvey to serve a four-year mandatory prison term on Count One, possession of a fentanyl-related compound, a first-degree felony in violation of R.C. 2925.11(A)(C)(11)(E); and a four-year mandatory prison term on Count Two, possession of heroin, a second-degree felony in violation of R.C. 2925.11(A)(C)(6)(d). The sentences were ordered to be served concurrently.

{¶16} The State filed a motion to dismiss Harvey's appeal of the August 27, 2021 sentencing entry or in the alternative, to remand the matter to the trial court due to the resentencing issue. On March 21, 2022, we denied the motion to dismiss and/or remand. We now consider Harvey's appeal of the August 27, 2021 sentencing entry.

## ASSIGNMENT OF ERROR

{¶17} Harvey raises one Assignment of Error:

{¶18} "I. APPELLANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTION 14 OF THE OHIO CONSTITUTION WERE VIOLATED WHEN THE TRIAL COURT OVERRULED THE MOTION TO SUPPRESS."

## ANALYSIS

{¶19} In Harvey's sole Assignment of Error, he argues the trial court should have granted his motion to suppress. We disagree.

{¶20} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶21} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion,

whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶22} Harvey does not dispute the facts and instead contends the trial court incorrectly decided the ultimate issue raised in the motion to suppress, so we review this case to determine whether the facts meet the appropriate legal standard.

{¶23} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). We note that Harvey does not seek to show on appeal that the underlying traffic stop itself was improper. The trial court determined Trooper Baker had probable cause to stop the vehicle based on his observation that the registration tag was obscured. R.C. 4503.21 requires that registration tags be displayed in plain view. Rather, the parties dispute whether the stop's scope and duration expanded beyond that which was necessary to effectuate the original purpose of the stop.

{¶24} "'[W]hen detaining a motorist for a traffic violation, an officer may delay a motorist for a time period sufficient to issue a ticket or warning.'" *State v. Elliot*, 5th Dist. Guernsey No. 18 CA 22, 2019-Ohio-4411, ¶ 21 quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12 quoting *State v. Keathley*, 55 Ohio App.3d 130, 131, 562 N.E.2d 932 (2nd Dist.1988). The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *State v. Latona*, 5th Dist. Richland No. 2010-CA-0072, 2011-Ohio-1253, 2011 WL 917728, ¶¶ 20-21 quoting *Florida v. Royer*,

460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *see also, State v. Gonyou*, 108 Ohio App.3d 369, 372, 670 N.E.2d 1040 (6th Dist.1995). The measure of the time period includes the time sufficient to run a computer check of the driver's license, registration, and vehicle plates. *State v. Elliot*, 2019-Ohio-4411, ¶ 21 citing *State v. Bolden*, 12th Dist. Preble No. CA2003-03-007, 2004-Ohio-184, ¶ 17 citing *Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Additionally, "'[i]n determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" *Id.*, quoting *State v. Carlson*, 102 Ohio App.3d 585, 598-599, 657 N.E.2d 591(9th Dist.1995), citing *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992), and *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). *See also State v. Whitman*, 184 Ohio App.3d 740, 2009-Ohio-5647, 922 N.E.2d 293 (5th Dist.); *State v. Woodson*, 5th Dist. Stark No. 2007-CA-00151, 2008-Ohio-670, ¶ 21.

{¶25} In overruling Harvey's motion to suppress, the trial court relied upon our opinion in *State v. Whitman*, 184 Ohio App.3d 733, 2009-Ohio-5647, 922 N.E.2d 293 (5th Dist.) (Edwards dissenting). In that case, the parties agreed that the defendant was lawfully stopped for a traffic violation. The question in *Whitman* was whether the lawful detention for the traffic infractions became an unlawful detention when the officer decided to use his narcotics-detection dog to sniff around the exterior of the defendant's vehicle. *Whitman*, 2009-Ohio-5647, ¶ 8. We explained in *Whitman*,

> The use of a drug-detection dog does not constitute a "search," and an
> officer is not required, prior to a dog sniff, to establish either probable cause

or a reasonable suspicion that drugs are concealed in a vehicle. *See Illinois v. Caballes* (2005), 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842; *United States v. Place* (1983), 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110; *State v. Carlson* (1995), 102 Ohio App.3d 585, 594, 657 N.E.2d 591; *United States v. Seals* (C.A.5, 1993), 987 F.2d 1102, 1106. The officer needs no suspicion or cause to "run the dog around" the stopped vehicle if he does it contemporaneously with the legitimate activities associated with the traffic violation. *See Caballes*, 543 U.S. at 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (upholding constitutionality of dog sniff conducted by an officer—"[w]hile [a second officer] was in the process of writing a warning ticket, [the second officer] walked his dog around [Caballes's] car" -- and stating that the use of the dog during Caballes's traffic stop "[did] not implicate legitimate privacy interests" because "the dog sniff was performed on the exterior of [Caballes's] car *while* he was lawfully seized for a traffic violation"). (Emphasis added.)

*Whitman*, 2009-Ohio-5647, ¶ 9.

{¶26} In this case, the purpose of the traffic stop had yet to be fulfilled when Trooper Baker made the decision to walk his K-9 Rexey around the exterior of the stopped vehicle. Trooper Baker, travelling with his K-9 Rexey, initiated the traffic stop based on a traffic violation. Sergeant Timberlake stopped at the scene with Trooper Baker. When asked for her driver's license, vehicle registration, and proof of insurance, Varner only provided Trooper Baker with her driver's license. "Beyond determining whether to issue a traffic ticket, an officer's mission during a traffic stop typically includes checking the

driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. *See Delaware v. Prouse*, 440 U.S. 648, 658–659, 99 S.Ct. 1391, 59 L.Ed.2d 660." *Rodriguez v. United States*, 575 U.S. 348, 349, 135 S.Ct. 1609, 1611, 191 L.Ed.2d 492 (2015).

{¶27} Trooper Baker asked Varner to exit the vehicle to show her the reason for the stop, the obscured registration tag. He asked Varner where she was coming from and where she travelling to. An officer may ask the driver about matters unrelated to the traffic stop itself, so long as those questions do not measurably extend the stop. *State v. Bergk*, 5th Dist. Fairfield No. 2021 CA 16, 2022-Ohio-578, 2022 WL 591840, ¶ 19 citing *State v. Johns*, 5th Dist. Licking No. 19-CA-5, 2019-Ohio-4269, 146 N.E.3d 1286, ¶16, citing *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492. "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed. 2d 299 (2005), citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

{¶28} Trooper Baker became suspicious that further criminal activity was afoot based on Varner's answers to his questions and Harvey's conflicting answers to the same questions. "An officer may not expand the investigative scope of the detention beyond that which is reasonably necessary to effectuate the purposes of the initial stop unless any new or expanded investigation is supported by a reasonable, articulable suspicion

that some further criminal activity is afoot." *Whitman*, 2009-Ohio-5647, ¶ 12 quoting *State v. Woodson,* 5th Dist. Stark No. 2007 CA 00151, 2008-Ohio-670, ¶ 22, citing *State v. Retherford*, 93 Ohio App.3d 586, 600, 639 N.E.2d 498 (1994), citing *United States v. Brignoni–Ponce*, 422 U.S. 873, 881–882, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Trooper Baker then seated Varner in the rear of his patrol car, asked Harvey to exit the vehicle, and seated Harvey in the rear of Sergeant Timberlake's patrol car. Trooper Baker gave Sergeant Timberlake Varner and Harvey's information to look up on LEADS. While Trooper Baker was waiting for Sergeant Timberlake's computer check on the driver's licenses, missing vehicle registration and proof of insurance, he walked Rexey around the exterior of the stopped vehicle. The entire process, from Trooper Baker's approach of the vehicle to Rexey's passive indication of narcotics, took approximately nine minutes.

{¶29} We have held that "the pertinent question is not whether the dog sniff occurs before or after the officer issues or could have issued the initial ticket, but whether the dog sniff adds time to the stop. *State v. Perkins*, 5th Dist. Richland No. 19CA38, 2019-Ohio-4328, appeal not allowed, 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 926." *State v. Sunkle,* 5th Dist. Licking No. 2021 CA 00092, 2022-Ohio-2442, 2022 WL 2784613, ¶ 19 citing *State v. Lewis*, 5th Dist. Knox No. 20CA000013, 2021-Ohio-1360, ¶ 22 appeal allowed, 164 Ohio St.3d 1403, 2021-Ohio-2742, 172 N.E.3d 161, ¶ 22 and appeal dismissed as improvidently allowed, 2022-Ohio-1570. In this case, we do not find there is evidence to suggest that Harvey's detention for the traffic violation was of sufficient length to make it constitutionally dubious. *See Whitman*, ¶ 19. There was no delay caused by calling for a narcotics-detection dog and waiting for its arrival because Rexey was already on the scene. Harvey was lawfully detained, and the purpose of the

traffic stop had yet to be fulfilled, so there was no Fourth Amendment violation in Trooper

Baker's decision to walk Rexey around the stopped vehicle.

{¶30} Harvey's sole Assignment of Error is overruled.

## CONCLUSION

{¶31} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Wise, John, J., concur.